J-S42001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: M.A.G. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.N.Y., MOTHER | : : : : : : | |
| | : | No. 842 WDA 2022 |

Appeal from the Decree Entered June 24, 2022
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
No. 21A in Adoption, 2022

| | | |
|---|---|---|
| IN THE MATTER THE ADOPTION OF: M.D.G. | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.N.Y., MOTHER | : : : : : | |
| | : | No. 843 WDA 2022 |

Appeal from the Decree Entered June 24, 2022
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
No. 21 In Adoption 2022

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED:  December 6, 2022**

J.N.Y. ("Mother") appeals from the decrees terminating involuntarily her parental rights to her children, M.D.G., born June 2017, and M.A.G., born July 2019.[1]  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This Court consolidated these appeals *sua sponte*.

We provide the following pertinent background. In August 2021, M.D.G. and M.A.G. were removed from Mother's care pursuant to an emergency protective order and placed in the custody of the Erie County Office of Children and Youth ("Agency"). The Agency was concerned with Mother's unstable housing, untreated mental health issues, verbal aggression during the removal process, and history with the Agency regarding the removal of two older children for similar concerns. M.D.G. and M.A.G. were adjudicated dependent and placed in a foster home.[2] Mother's goals for reunification included submitting to a mental health assessment and following the recommended therapy, participating in domestic violence and anger management programs, cooperating with Family Reunification, attending the children's medical appointments, obtaining employment and stable housing, and maintaining contact with the Agency.

Between August and December 2021, Mother had approximately nine visits with the children. M.D.G. had to be forcibly extracted from the foster home and placed in a vehicle to be transported to visits by Stephen Davis, the Agency case aide. During the car ride, M.D.G. would tell Mr. Davis that she wanted to stay with her new mom and did not want to go to her old mom because she made her feel sad, bad, and unsafe. Following the latter visits, M.D.G. would evacuate her bladder during the car ride back to the foster

_____

[2] The children have remained together in the same pre-adoptive foster home since their initial placement.

home. Also, during this period, Mother terminated her mental health treatment in anticipation of moving out of the county.

These events were relayed at the first permanency review hearing in December. Additionally, the caseworker, Danielle Lubak, notified the court of two incidents with Mother that indicated mental health stability concerns. At the conclusion of the hearing, the court found Mother minimally compliant with the permanency plan, noting she had made minimal progress towards alleviating the circumstances that led to placement. Accordingly, it added a concurrent goal of adoption. The court also suspended visitation until it was deemed therapeutically appropriate "[d]ue to . . . M.D.G.'s behaviors regarding visits, [Mother's] decline in acting appropriately with the children, and [Mother's] failure to acknowledge or even discuss the children's need for trauma therapy[.]" Orphans' Court Opinion, 8/19/22, at 4.

At that time, the court also ordered a psychological evaluation and bonding assessment to be conducted by Peter von Korff, Ph.D. Mother refused to participate, so Dr. von Korff conducted the bonding assessment solely as to the children and their foster parents. Mother, meanwhile, moved to Ohio, was unsuccessfully discharged from her services in Erie County, and did not provide proof of participation in any services in Ohio. "Based on [Mother's] lack of compliance with the permanency plan and failure to alleviate the circumstances which necessitated the original placement, the [c]ourt granted the Agency's request to change the goal to adoption[.]" *Id*. at 5. The court

did not resume visitation. Thus, the children's last contact with Mother was in December 2021.

On April 13, 2022, the Agency filed a petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b).[3] The orphans' court held a hearing on the petition on June 22, 2022.[4] The court heard testimony from Dr. von Korff, Ms. Lubak, Mr. Davis, and Mother.[5] At the conclusion of the hearing, the orphans' court granted the Agency's petition to terminate Mother's parental rights involuntarily pursuant to § 2511(a)(1), (2), and (b). The court found Mother "ha[d] not made any efforts to remedy the conditions that put [her] in this position in the first place[.]" N.T., 6/22/22, at 101. While acknowledging that Mother claimed to have stable housing in Ashtabula, Ohio, the court observed that the Agency could not review the housing or its adequacy because it was out of state in a "completely different jurisdiction." *Id*. Additionally, the court noted that its

---

[3] The Agency also sought termination of the parental rights of S.L.G. ("Father"). Father has not appealed the involuntary termination of his parental rights as to M.D.G. and M.A.G.

[4] M.D.G. and M.A.G. were represented by their guardian *ad litem*/legal counsel. Counsel did not file a substantive brief on appeal but did file a letter joining the Agency's brief in support of termination.

[5] The orphans' court thoroughly detailed the testimony presented at the termination hearing in its Rule 1925(a) opinion. *See* Orphans' Court Opinion, 8/19/22, at 6-11.

reunification efforts had been detrimental to the children and found that termination was in their best interests. *See id*.

This timely filed appeal followed. Both Mother and the orphans' court have complied with Pa.R.A.P. 1925.[6] Mother presents the following for our consideration: "Did the [orphans' c]ourt abuse its discretion in terminating [Mother's] parental rights when the record is comprised of insufficient competent evidence to establish grounds for termination? And, did the [orphans' c]ourt abuse its discretion by finding that severance of [Mother's] parental rights would serve the child's best interest?" Mother's brief at 4.

We begin with our standard of review for matters involving involuntary termination of parental rights:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re Adoption of B.G.S.*, 245 A.3d 700, 704 (Pa.Super. 2021) (cleaned up).

"The trial court is free to believe all, part, or none of the evidence presented

---

[6] The orphans' court initially stated its belief that Mother had waived her claims on appeal due to a vague concise statement. *See* Orphans' Court Opinion, 8/19/22, at 12. As the orphans' court was able to ascertain Mother's claims on appeal and addressed them substantively, we decline to find waiver.

and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *Interest of G.M.K.*, 255 A.3d 554, 560 (Pa.Super. 2021) (cleaned up). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

Mother argues that the Agency failed to establish by clear and convincing evidence the statutory grounds for termination of her parental rights or that termination would be in the best interests of her children. [7] *See*

---

[7] Although Mother essentially raises two issues, one as to § 2511(a) and one as to § 2511(b), Mother presents a single argument section in her brief. Although this technically violates Pa.R.A.P. 2119(a), we decline to find waiver on this basis.

Mother's brief at 7. We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up). Termination is proper when the moving party proves grounds for termination under any subsection of § 2511(a), as well as § 2511(b). *T.B.B.*, *supra* at 395. To affirm, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, we focus our analysis on § 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Our Supreme Court set forth the proper inquiry under § 2511(a)(1) as follows:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998) (citation omitted).

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa.Super. 2002). In this vein, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id*. at 340 (citation omitted). As it relates to § 2511(a)(1), "[a] parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003) (citation omitted).

- 8 -

Mother assails various portions of the testimony provided by Dr. von Korff, Ms. Lubak, and Mr. Davis. *See* Mother's brief at 12-14. According to Mother, her testimony "reveal[ed] that she maintained contact with the Agency after her relocation and remained focused on reunification with her children." *Id*. at 15.

The orphans' court concluded that Mother "consistently demonstrated an unwillingness to acknowledge or alleviate any issues that brought the children into the Agency's care." Orphans' Court Opinion, 8/19/22, at 15. "In fact, the longer the case went on, the more [Mother] demonstrated a decline in the stability and ability to parent the children." *Id*. at 14. Specifically, the court addressed Mother's failure to perform parental duties as follows:

> [Mother] was given an opportunity to engage in services under her treatment plan, visit with the children, and attend their medical appointments. However, at the time of the first permanency review hearing, [Mother] had minimal effort in complying with her treatment plan and minimal progress at alleviating the circumstances, which necessitated the children's removal from [Mother's] care. At the first permanency review hearing, the court heard testimony regarding [Mother's] declining interactions with the children at a dentist appointment and during visits where she referred to the foster mother as a "stranger" and told the children not to "trust her."
>
> Based on the testimony regarding M.D.G.'s behaviors before and after visits, and testimony that [Mother] kicked the caseworker out of her home when she tried to discuss the children's need for trauma therapy, a concurrent goal of adoption was added, and the court stopped visitation. At the same time, the children began therapy, and the court ordered [Mother] to participate in a psychological and bonding assessment with Dr. von Korff.

Shortly after the December review hearing, [Mother], despite being advised it would harm her chance at reunification, moved to Ashtabula, Ohio. Consequently, the respective providers unsuccessfully discharged her from her services in Erie County. Additionally, despite being able to participate with Dr. von Korff by telephone, [Mother] refused to participate in the court ordered psychological and bonding assessment and ultimately demonstrated no compliance with the treatment plan during the second review period.

*Id*. (cleaned up).

As evidenced by the detailed recitation of the testimony presented at the termination hearing by the orphans' court, the court's factual findings are supported by the certified record. *See id*. at 6-11. Thus, we discern no abuse of discretion by the orphans' court in finding grounds to terminate Mother's parental rights pursuant to § 2511(a)(1).

Next, we consider whether the orphans' court committed an error of law or abuse of discretion pursuant to § 2511(b). As explained above, § 2511(b) focuses on the needs and welfare of the children, which includes an analysis of any emotional bond that the children may have with Mother and the effect of severing that bond. *L.M.*, *supra* at 511. The key questions when conducting this analysis are whether the bond is necessary and beneficial and whether severance of the bond will cause the child extreme emotional consequences. *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa.Super. 2018) (quoting *In re E.M.*, 620 A.2d 481, 484–85 (Pa. 1993)). It is important to recognize that the existence of a bond, while significant, is only one of many factors courts should consider when addressing § 2511(b). *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.*, 33

A.3d 95, 103 (Pa.Super. 2011)). Other factors include "the safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*.

On appeal, Mother attacks the credibility of Dr. von Korff's bonding assessment. *See* Mother's brief at 12-13. Mother notes that he never met with Mother and only had one meeting with the children. *See id*. at 12. Additionally, she claims his testimony revealed problems with the bonding assessment due to the young ages of the children and his reliance on the court summary and background information from the foster parent. *See id*. at 12-13.

In relation to § 2511(b), the orphans' court concluded as follows:

> The testimony at the [termination] trial clearly established that it is in the children's best interest to terminate [Mother's] rights. Ms. Lubak and Mr. Davis testified that the children both suffered behavioral issues surrounding visits with [Mother]. Even assuming the visits did not relate to their relationship with [Mother], an assumption inconsistent with the evidence, [Mother] refuses to acknowledge the behaviors or the children's need for trauma therapy.

> Further, testimony was clear that the children's significant needs were/are being met in the foster/pre-adoptive home, and it would be in their best interest for [Mother's] right to be terminated so that they may find permanency.

Orphans' Court Opinion, 8/19/22, at 15 (cleaned up).

Preliminarily, we note that Mother mischaracterizes Dr. von Korff's testimony. His testimony revealed that he attempted to engage Mother in the court-ordered psychological evaluation and bonding assessment but she

refused to comply and terminated their telephone conversation. *See* N.T., 6/22/22, at 9. Lacking any cooperation from Mother or Father, Dr. von Korff had no choice but to rely on the foster parents, the Agency, and the court summary for background information. Moreover, despite Mother trying to cast Dr. von Korff's findings as being pre-determined, Dr. von Korff expressly rejected that accusation, testifying "[t]hat is not true and that's really kind of a terrible misread of what I've been saying." *Id*. at 30.

Contrary to Mother's assertions, the certified record supports the factual findings of the orphans' court. Dr. von Korff found that based upon his assessment of M.D.G. and M.A.G., neither child would be harmed by termination of Mother's parental rights. *See id*. at 21. Dr. von Korff elaborated:

> I wanted to make it clear to the [c]ourt that these children would not be harmed by a termination of the parents' rights because they have experienced so much trauma and so much abandonment by parents who clearly have indicated to me that they are unwilling to even comply with the most basic [c]ourt mandate such as, you know, have an assessment. So, there is a strong indication to me that there is not going to be any change forthcoming for these parents and therefore these children – and, fortunately, they're quite young, they have a chance to securely attach.

*Id*. at 22.

Furthermore, the record bears out that the foster parents, rather than Mother, are whom the children seek for safety, affection, and structure. The children refer to the foster mother as "mom" and it is the foster parents who are providing for the needs of the children, including their emotional and

therapeutic needs. *See id*. at 64-65. Accordingly, we discern no abuse of discretion by the orphans' court in concluding that termination was in the best interests of the children.

Based on the foregoing, we affirm the decrees terminating Mother's parental rights as to M.D.G. and M.A.G.

Decrees affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/6/2022